IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA PLASENCIA DE PULIDO,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.: 1:10-cv-01799 LJO JLT<br><br>FINDINGS AND RECOMMENDATION DIRECTING THE ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF MARTHA PLASENCIA DE PULIDO |

Martha Plasencia de Pulido ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in his evaluation of the evidence. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the Court recommends the administrative decision be **AFFIRMED**.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for supplemental security income on December 19, 2007, alleging disability beginning October 23, 2007. AR at 16. Plaintiffs' applications were denied initially and upon reconsideration. *Id.* at 56-59, 63-67. After denial of benefits, Plaintiff requested a hearing, which was held before an ALJ on October 7, 2009. *Id.* at 26, 68. The ALJ determined

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff was not disabled as defined under the Social Security Act and issued an order denying benefits on January 25, 2010. AR at 16-22. Plaintiff requested a review by the Appeals Council of Social Security, which denied review of the ALJ's decision on July 29, 2010. *Id.* at 1-4. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for supplemental security income under Title XVI of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. § 416.927.

**A.   Relevant Medical Evidence**

Dr. Don Endress treated Plaintiff at Cedar Family Practice Center from 1999 to 2009 for her various impairments, including coughs and colds, diabetes, kidney stones, and pain.  *See* AR at 159-206, 231-79, 310-412.

On February 19, 2007, Plaintiff had x-rays taken of her right hand.  AR at 228.  Dr. Matthew Iwamoto noted Plaintiff had a "history of a fall one year ago with increasing pain in the last year."  *Id.*  Dr. Iwamoto observed Plaintiffs' distal radius and ulna were normal, and there was "no evidence of a carpal fracture or malalignment."  *Id.*  In addition, Dr. Iwamoto found Plaintiff's joints were normal, with the exception of an "[o]steoarthritis change of the distal interphalangeal joint of the index finger."  *Id.*

At an appointment with Dr. Endress on November 1, 2007, Plaintiff reported she "want[ed] disability because . . . her [right] hand goes numb since having a box fall on this at work."  AR at 201.  Dr. Endress noted no paperwork was filled out for her work, and Plaintiff reported she had "asked to move to other position at work."  *Id.*  However, she informed Dr. Endress that "her job

[was] not interested in having her do something else so [she] wants disability." *Id.* Dr. Endress ordered x-rays of Plaintiff's right shoulder and elbow to "satisfy [Plaintiff]." *Id.* In reviewing the x-rays, Dr. John Martin observed, "No significant bony, soft tissue, or articular abnormality is demonstrated" in Plaintiff's right elbow and right shoulder. *Id.* at 181-82.

In December 2007, Dr. Endress noted Plaintiff had "a lot of trouble with kidney stones," and she was "still not working due to pain in the legs and back and weakness." AR at 197. Therefore, Dr. Endress noted he would "fill out paper work for disability until March 1, 2008." *Id.*

On March 21, 2008, Dr. Endress noted Plaintiff sought "to extend her disability leave." AR at 193. Dr. Endress noted Plaintiff "continues to have hand pain and lower back pain and dysuria and has a ureteral stent in place. [Plaintiff] has many reasons she can not [sic] return to work." *Id.* at 193. At that time, Dr. Endress opined he would "extend the disability leave until beginning of June 08." *Id.*

Dr. Tri Minh Pham completed a consultative examination on April 8, 2008. AR at 207-09. Dr. Pham observed Plaintiff was "not in any acute distress," and tested her range of motion and grip strength. *Id.* at 208. According to Dr. Pham, Plaintiff had "less strength on the right hand compare of left hand, but it is very subjective due to her response." *Id.* Dr. Pham observed:

> Muscle strength is 5/5 in both upper and lower extremities. Gait is normal. There is no evidence of muscle atrophy or deformation of any joints, her fine finger movement is normal, she can write, unbutton buttons, use small tools, hear, speak, and travel. Her mental status is grossly normal with no evidence of depression.

*Id.* at 208. Dr. Pham concluded Plaintiff could "walk, sit, stand, carry or lift with no restriction, no limitation of range of motion." *Id.* Further, Dr. Pham found Plaintiff did not require an assistive device. *Id.* Based upon this assessment, Dr. Roger Fast and Dr. Sadda Reddy opined Plaintiff's impairments were "non-severe." *Id.* at 210, 220.

On April 15, 2008, Dr. Endress noted Plaintiff complained of having numbness and, at times, pain in the soles of her feet. AR at 192. Dr. Endress expressed surprise that Plaintiff was seeking disability, because he noted: "PT working on disability???? At this time all is well. ???????????" Plaintiff reported for a follow-up on her blood sugar levels on May 15, 2008. *Id.* at 191-92. In May 2008, Dr. Endress noted Plaintiff complained of "pain in the [left] buttocks area that runs down her

4

[left] leg." AR at 191, 242. He observed Plaintiff was "working very hard for disability." *Id.* In June 2008, Dr. Endress noted Plaintiff complained that her hands were numb and that "[right] shoulder and arm pain make working impossible." *Id.* at 190, 240.

On August 1, 2008, Plaintiff had x-rays taken of her lumbar spine. AR at 227. Dr. Douglas Tait opined Plaintiff had "normal mineralization" in her lumbar spine, and he found "no evidence of gross compression fractures or boy lesions." *Id.* According to Dr. Tait, Plaintiff had a "[m]inimal amount of degenerative spondylosis at the L2-3 and L3-4 levels," and "[b]ilateral sacroiliac joint arthropathy." *Id.* In addition, Plaintiff had "injection granulomas within the soft tissues" of her lumbar spine. *Id.*

On August 19, 2008, Dr. Endress noted Plaintiff went to a chiropractor for her back pain. AR at 237. He noted Plaintiff had a prescription for Neurontin for her back pain but was not taking it. *Id.* Therefore, Dr. Endress had a discussion with Plaintiff regarding "taking the Neurontin as directed." *Id.* In September 2008, Dr. Endress extended Plaintiff's disability from work for the purpose of getting a neurological consultation because Plaintiff reported she was unable to go within the current time frame. *Id.* at 235. Dr. Endress noted it was the "last time" he would extend her disability "unless neuro comes up with something concrete." *Id.*

In December 2008, Dr. Endress noted Plaintiff "continues with her multiple complaints of back pain and arm pain and feels she should not have to work for rest of life." AR at 232. Dr. Endress had a "long discussion" with Plaintiff regarding his "lack of confidence in her chronic disability and suggested she look for a more sympathetic doctor to manage her." *Id.*

On January 15, 2009, Dr. Endress noted that Plaintiff had returned to him for re-evaluation of her diabetes. AR at 231. He observed again that Plaintiff "continues to have all kinds of complaints" and she failed to show up for her carpal tunnel surgical consultation. *Id.* Dr. Endress noted, "Again expressed my lack of interested (sic) in continuing to manage her health care and suggested she find another MD for her multiple issues." *Id.* Therefore, Dr. Endress sent Plaintiff a letter terminating her from his practice. *Id.*

On February 18, 2009, Plaintiff had an x-ray of her thoracic spine. AR at 306. Dr. Marek Z. Rozycki found Plaintiff's "[b]ony alignment is normal" and "[d]isc spaces and vertebral body

heights are well maintained." *Id.* According to Dr. Rozycki, Plaintiff had "[m]ild degenerative changes . . . consistent with age." *Id.*

In February 2009, Plaintiff began chiropractic treatment with Dr. Mark Whitemyer. AR at 511. Plaintiff reported she had pain "all the time" in her low and upper back, right leg, right arm, and neck. *Id.* at 515, 519. On pain questionnaires, Plaintiff indicated her neck pain was "moderate and does not vary much," while her back pain was "severe and does not vary much." *Id.* at 521-23. Dr. Whitemyer noted Plaintiff "takes pain medications on her own for pain," but the pain was "getting worse." *Id.* at 425. On April 13, 2009, Plaintiff reported her pain was a four to five on a scale of one to ten, and said her symptoms were present 51-75% of the time. *Id.* at 557. Dr. Whitemyer observed, "Improvement can be seen with spinal manipulations, [illegible], and spinal decompression." *Id.* at 556. Further, he found Plaintiff's "[range of motion] in low back and neck is within normal limits with less pain than initial exam." *Id.* at 557.

Also, Plaintiff was treated by Dr. Bradley Smith, who opined Plaintiff had "[m]ild-to-moderate carpal tunnel syndrome." AR at 281. On July 2, 2009, Dr. Smith noted Plaintiff "appear[ed] to have responded well" with wearing a night splint. *Id.*

Dr. Alan Jakubowski performed a physical medicine and rehabilitation consultation in conjunction with Plaintiff's Worker's Compensation claim on July 8, 2009. AR at 473-75. Dr. Jakubowski noted, "[Plaintiff] reports the medications provided by her doctor, ibuprofen and gabapentin, are very helpful to reduce her pain." *Id.* at 473. On examination, Dr. Jakubowski found "several diffuse tender points" on Plaintiff's cervical spine, as well as tender points on her "anterior shoulders, medial and lateral apicondyles, bilateral greater trochanters, knees and achilles tendons." *Id.* at 474. Plaintiff's range of motion was normal in her cervical spine, but was "50% of normal" in her lumbar spine, and side bending was "limited to 50% of normal bilaterally." *Id.* Also, Dr. Jakubowski found Plaintiff's "[p]assive [range of motion] of shoulders is normal, but active [range of motion] is 90 degrees." *Id.* Finally, Plaintiff exhibited tenderness in her right hand.

On October 8, 2009, Plaintiff had an x-ray of her lumbar spine. AR at 594. Dr. Robert Anderson found "[d]isc desiccation is present at what appears to be L5-S1." *Id.* Specifically, Dr. Anderson found:

      L3-4:   Normal disc configuration, spinal canal and neural foramina.

      L4-5:   Mild disc bulging with normal neural foramina and normal spinal canal.

      L5-S1:   There is a small central protrusion without nerve root displacement or impingement.

*Id.* Further, Dr. Anderson opined the remaining discs were normal, with no spinal stenosis. *Id.* Therefore, Dr. Anderson opined Plaintiff had "[d]egenerative disc disease L5-S1 with tiny central protrusion." *Id.*

**B.  Hearing Testimony**

Plaintiff testified before an ALJ with the assistance of an interpreter on October 7, 2009. AR at 26. Plaintiff said she worked at a packing shed for about seven years. AR at 37. Plaintiff reported the heaviest weight she had to lift was "[l]ike 50 pounds," which was the weight of sugar sacks. *Id.* However, Plaintiff said an accident occurred at work in 2004 or 2005 when a supervisor dropped some boxes and they fell on her. *Id.* at 38. Plaintiff attributed right arm and hand pain to this accident, and said that she was not permitted to lift 50 pounds any longer. *Id.* at 38-39. Plaintiff estimated that for her last three years of work, she had to lift "like 20 pounds." *Id.* at 39.

Plaintiff said she suffered a fall in 2007, which caused her to hit her low back and hip. *Id.* at 34-35. Plaintiff stated that she continued to work after the fall, and went a doctor later that day, but the doctor told her "there was nothing wrong. It was just that [she] was older." *Id.* at 35. She said she had pain in her back; neck; and right leg, arm, and hand. *Id.* at 31-32. Plaintiff described the pain as severe "throbbing," and said it was an "eight" on a scale of one to ten, with ten being "screaming pain." *Id.* at 32. Plaintiff believed she did not have the strength to work in the packing shed any longer, and estimated she could lift eight pounds comfortably. *Id.* at 38, 43.

Plaintiff testified that her doctors talked about doing surgery on her right hand, but she was afraid to have surgery. *Id.* at 40. Plaintiff said she was given some exercises for her hand that helped "a little bit," but she had problems holding smaller things like pens and pencils or doing buttons because her fingers "get numb." *Id.* at 42-43. Also, Plaintiff said she did some therapy exercises for her feet each day, and was going to start some with her back. *Id.* at 42. Plaintiff said she would lie down four times a day for about an hour each time. *Id.* at 43.

1    She said she was able to do "[v]ery little" of the household chores, and she did not do any
2 sweeping, mopping, or vacuuming. AR at 41. Plaintiff said she used to do these chores, and she
3 used to iron, but she was unable to do so any longer. *Id.* at 43. However, Plaintiff stated she
4 "wash[ed] a few dishes" and could "cook something simple." *Id.* Plaintiff reported she never had a
5 driver's license, and if she had to go somewhere her husband or son would take her. *Id.* at 41-42.

6    Plaintiff believed that she had the ability to walk for 20 minutes without it bothering her. AR
7 at 42. She said standing was more comfortable than sitting. *Id.* Plaintiff estimated she could sit for
8 about thirty minutes or stand for one hour at a time. *Id.* at 43. She reported that she had problems
9 reaching overhead or in front with her right hand. *Id.* at 44. Plaintiff said she had trouble bending
10 because of "a lot of pain" in her lower back. *Id.* at 46. In addition, Plaintiff said she felt "dizzy
11 [and] confused" as side effects from her medication. *Id.* at 51.

12    Plaintiff testified she was able to read and write in Spanish, and was able to understand a
13 little English. AR at 44, 49.

### C. The ALJ's Findings

15    Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial
16 gainful activity since her application date of December 19, 2007. AR at 18. Second, the ALJ found
17 Plaintiff had the following severe impairments: diabetes mellitus, a history of kidney stones, lumbar
18 degenerative disc disease, and mild to moderate carpal tunnel syndrome. *Id.* The ALJ determined
19 Plaintiff's impairments did not meet or medically equal a Listing. *Id.* Next, the ALJ found Plaintiff
20 had the residual functional capacity ("RFC") "to perform the full range of medium work." *Id.* at 18.
21 With this RFC, the ALJ found Plaintiff was capable of performing her past relevant work as an
22 assembly worker. *Id.* at 22. Therefore, the ALJ concluded Plaintiff was not disabled as defined by
23 the Social Security Act. *Id.*

### DISCUSSION AND ANALYSIS

### A. The ALJ set forth clear and convincing reasons in discounting Plaintiff's credibility.

26    In determining credibility, an ALJ must determine first whether objective medical evidence
27 shows an underlying impairment "which could reasonably be expected to produce the pain or other
28 symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1208, 1035-36 (9th Cir. 2007) (quoting *Bunnell*

*v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). An adverse finding of credibility must be based on clear and convincing reasons where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 19. However, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible . . ." *Id.*

Factors that an ALJ may consider in making a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony of physicians concerning the nature, severity, and effect of the symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 287 F.3d 947, 958-59 (9th Cir. 2002). Credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Here, the ALJ considered the objective medical evidence, the treatment Plaintiff received for her impairments, and her daily activities. AR at 19-21. Nevertheless, Plaintiff contends the ALJ "failed to provide clear and convincing reasons for rejecting Plaintiff's testimony that she could not return to her past work . . ." (Doc. 16 at 3).

*Objective medical evidence*

As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ

"must consider the entire case record, including the objective medical evidence," but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Here, the ALJ did not base his credibility determination solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the extensive objective medical evidenc cited by the ALJ was a relevant consideration in determining Plaintiff's credibility.

*Plaintiff's medical treatment*

The ALJ noted Plaintiff's orthopedist "observed that the claimant 'appears to have responded well' to a treatment program that included occupational therapy support, a home exercise program and the use of a night splint" for her carpal tunnel syndrome. AR at 19. Further, the ALJ noted, "her primary care physician, Dr. Endress noted that the claimant had Motrin at home for her carpal tunnel syndrome but was not using it." *Id.* at 20. Likewise, the ALJ considered the fact that Plaintiff used "home therapy and refused any oral medications or injections" for her plantar fascia on both feet. *Id*. In assessing Plaintiff's credibility about her symptoms, the treatment Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). Likewise, the lack of treatment is a valid consideration in a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Consequently, the treatment Plaintiff received for her alleged impairments was a valid consideration by the ALJ as part of the credibility determination.

*Daily activities*

A claimant's ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch*, 400 F.3d at 680 (the claimant's activities "suggest that she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances…"). The Ninth Circuit found the ability to "take care of . . . personal needs, prepare easy meals, do light housework, and shop for some

10

groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1125, 1130 (9th Cir. 1990).

In this case, the ALJ considered Plaintiff's activities of daily living including the fact that "she performs simple household chores, such as washing a few dishes, cooking simple meals for herself, and goes grocery shopping." AR at 21. In addition, Plaintiff testified that she went outside with her pet, and she did exercises for her hands, back and feet. *Id.* The daily activities are comparable to those of the claimant in *Curry*, and the ALJ's finding that the Plaintiff's "activities of daily living are inconsistent with her allegations as to the debilitating nature of her impairments" was a clear and convincing reason to discount Plaintiff's credibility.

*Consideration of other factors*

Plaintiff asserts the ALJ "failed to consider factors identified in SSR 96-7p,[2] such as the side-effects of medication (dizziness and confusion), and the facts that supported Plaintiff's credibility, such as her consistent statements, solid work history, and good effort on testing and examination." (Doc. 16 at 13). However, this argument misconstrues the requisite standard of review. Previously, this Court explained: "It is not the role of the Court to redetermine Plaintiff's credibility *de novo*. If the ALJ's interpretation of the evidence was rational, as it was here, the Court must uphold the ALJ's decision…" *Higgins v. Astrue*, 2010 U.S. Dist. LEXIS 63532 at *26 (E.D. Cal. June 4, 2010). In this case, the ALJ's credibility findings were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d at 885. Therefore, the findings must be upheld though the ALJ did not consider *all* possible factors. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1995)) ("Although the findings upon which this determination was based were not as extensive as they might have been, they sufficed to show that the ALJ did not arbitrarily reject [the claimant's] testimony.").

///

---

[2] Social Security Rulings ("SSR") are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). SSR 96-7p sets forth factors for an ALJ's consideration when assessing the credibility of a claimant. *See* SSR 96-7p, 1996 SSR LEXIS 4.

**B. The ALJ did not err at step-two of the sequential evaluation.**[3]

In the course of describing the ALJ's evaluation of the medical evidence as it applied to the credibility determination, Plaintiff alleges the ALJ "should have sought to establish the reason for drawing any negative inferences" regarding Plaintiff's use of pain relievers. (Doc. 16 at 11). In addition, Plaintiff asserts the ALJ failed to consider her diagnosis of fibromyalgia and the possibility of lumbar radiculopathy. (*Id.* at 11-12; Doc. 18 at 2-3). Consequently, Plaintiff implies the ALJ had a duty to develop the record, and failed to find fibromyalgia and lumbar radiculopathy as severe impairments.

1. The duty to develop the record was not triggered.

The law is well-established in this Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, the law imposes a duty on the ALJ to develop the record in only some circumstances. 20 C.F.R. § 404.1526(d)-(f) (recognizing a duty on the agency to develop medical history, recontact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1512(e). As a result, the ALJ is required to seek additional information from a treating physician "when a report . . . contains a conflict or ambiguity that must be resolved" prior to the disability determination. 20 C.F.R. § 416.912(e)(1).

---

[3] Plaintiff does not specifically allege the ALJ erred at step two of the sequential evaluation. The Ninth Circuit "has repeatedly admonished that [it] cannot manufacture arguments for an appellant." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (internal quotations omitted). Rather, the Court will "review only issues with are argued *specifically and distinctly.*" *Id.* (emphasis added). Therefore, when a claim of error is not argued and explained, the argument is waived. *See, id.* at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding the assertion of error was "too undeveloped to be capable of assessment"). However, Plaintiff's arguments regarding the credibility determination implicate error by the ALJ regarding a failure to develop the record and to consider certain diagnoses in the medical record. Despite Plaintiff's failure to set forth any argument in a "specific and distinct" manner, the Court will address these arguments to determine whether the ALJ erred at step two of the evaluation.

Significantly, the ALJ did not base his decision that Plaintiff was not disabled on noncompliance with medical treatment. Rather the ALJ merely observed "Dr. Endress noted that the claimant had Motrin at home for her carpal tunnel syndrome but was not using it" in the course of his credibility determination while discussing her treatments. *See* AR at 20. Failure to follow a course of treatment "can cast doubt on the sincerity of the claimant's pain testimony," and does not necessarily trigger a duty to develop the record. *See Fair*, 885 F.2d at 603. The evidence in the record was not ambiguous, and the ALJ did not find the record was insufficient to make a disability determination. Though Plaintiff asserts the ALJ should have sought the reason Plaintiff did not use her pain medication, the ALJ had sufficient information to render his decision regarding her alleged disability, and therefore the duty to develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered when the ALJ did not conclude the medical report was inadequate to make a disability determination); *Mayes*, 276 F.3d at 459-60.

    2.   <u>Plaintiff has failed to demonstrate the ALJ erred by failing to discuss fibromyalgia or lumbar radiculopathy.</u>

The inquiry at step two for severe impairments is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) citing *Bowen*, 482 U.S. 137, 153-54 (1987). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). At step two, a claimant must make a "threshold showing" that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment. *Id.*

An impairment, or combination thereof, is "not severe" only if the evidence establishes that it has "no more than a minimal effect on an individual's ability to do work." *Smolen*, 80 F.3d at 1290. Previously, this Court explained: "A mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not an impairment make." *Nottoli v. Astrue,* 2011 U.S. Dist. LEXIS 15850,

at *8 (E.D. Cal. Feb. 16, 2011); *Huynh v. Astrue*, 2009 U.S. Dist. LEXIS 91015, at *6 (E.D. Cal. Sept. 30, 2009); see also *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability"). For an impairment to be "severe," it must significantly limit the claimant's physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(b). Though Plaintiff points to the diagnosis of fibromyalgia and the hypothesis that she may suffer from lumbar radiculopathy, Plaintiff does not show that these impairments are severe, or present evidence demonstrating their impact upon her ability to do work. Therefore, the ALJ did not err at step two of the sequential evaluation.

**C. The ALJ's determination that Plaintiff can perform past relevant work is supported by substantial evidence in the record.**

A claimant has the burden of proof at step four of the sequential analysis to establish that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). The ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). The Ninth Circuit explained, "[a]lthough the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* at 844.

Here, Plaintiff argues, "The ALJ erred at step four by failing to make the requisite findings prior to concluding that Plaintiff could return to her past work as an assembly worker." (Doc. 16 at 14). According to Plaintiff, SSR 82-62 "stresses that the decision that a claimant has the RFC to perform past relevant work has far-reaching implications and must be developed and explained fully in the ALJ's decision. [Citation.] The ALJ did not satisfy the requirements of this ruling." *Id.* First, Plaintiff contends the ALJ's finding that Plaintiff could perform "a full range of medium work with no additional limitations, did not adequately take into account the medical or testimonial evidence, which corresponded more to a limitation to sedentary work." *Id.* Second, Plaintiff argues the ALJ

erred in finding Plaintiff's past work was light work which Plaintiff could perform because "the ALJ did not address Plaintiff's specific job requirements." *Id.* at 15.

### 1. The RFC set forth by the ALJ is supported by substantial evidence.

The ALJ concluded "the medical evidence shows that the claimant has more than minimal functional limitation in her ability to perform basic work activities." AR at 21. As noted above, the ALJ found Plaintiff was able "to perform the full range of medium work as defined in 20 CFR 416.967(c)." *Id.* at 18. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). In determining Plaintiff was capable of performing medium work, the ALJ gave "some weight" to the opinions of Dr. Fast and Dr. Reddy, who opined Plaintiff's impairments were not severe. AR at 21. In addition, the ALJ gave "some weight" to the opinion of consultative examiner Dr. Pham." *Id.*

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the opinion of Dr. Pham, examining physician, should be afforded the greatest weight because there is not an opinion offered by a treating physician regarding Plaintiff's mental abilities.

As noted by the ALJ, Dr. Pham opined Plaintiff could "walk, stand, sit, carry or lift with no restriction." AR at 21. Importantly, Dr. Pham's opinion was based upon independent clinical findings and the results of objective medical testing on Plaintiff's ranges of motion and grip strength. *See id*. at 207-09. The opinion of an examining physician may be substantial evidence when the conclusions were based upon (1) diagnoses differing from those offered by a treating physician and that are supported by substantial evidence or (2) findings based on objective medical tests. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

2001). Therefore, because Dr. Pham carried out his own objective medical tests, his conclusion that Plaintiff could perform work *without physical restrictions* is substantial evidence in support of the RFC set forth by the ALJ that Plaintiff was capable of performing medium work.

In addition, the opinions of Dr. Fast and Dr. Reddy, non-examining physicians, support the finding that Plaintiff was capable of performing medium work. The opinions of no examining physicians "may constitute substantial evidence when . . . consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149. Here, Dr. Fast and Dr. Reddy opined Plaintiff's impairments were not-severe, and therefore found the impairments had "no more than a minimal effect on an individual's ability to do work." *See Smolen*, 80 F.3d at 1290. Consequently, the conclusions of Dr. Fast and Dr. Reddy were consistent with Dr. Pham's conclusion that Plaintiff could work without restrictions, and are substantial evidence in support of the RFC that Plaintiff could perform medium work.

2. The ALJ did not err in finding Plaintiff could perform her past relevant work.

At step four, the ALJ found Plaintiff was "capable of performing past relevant work as an assembly worker." AR at 22. The ALJ noted Plaintiff's past relevant work was categorized by the *Dictionary of Occupational Titles*[4] as "light, unskilled work, with a Specific Vocational Preparation level of 2." *Id.* (citing DOT job code 706.687-010). Further, the ALJ observed Plaintiff "described her past work as an assembly worker as being performed at the light exertional level." *Id.* Because the ALJ concluded Plaintiff had the RFC to perform the full range of medium work, the ALJ concluded Plaintiff was capable of performing her past relevant work "as generally and actually performed." *Id.*

Plaintiff contends the ALJ erred in this finding because "Plaintiff could not perform the lifting, standing/walking, or sitting requirements of light or even a full range of sedentary work."

---

[4] The *Dictionary of Occupational Titles* by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *Dictionary of Occupational Titles* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1). Notably, the Ninth Circuit considers the *Dictionary of Occupational Titles* to be the "best source for how a job is generally performed." *Carmickle*, 553 F.3d at 1166; *Pinto*, 249 F.3d at 845.

(Doc. 16 at 15). Also, Plaintiff argues the ALJ failed to address the specific job requirements such as "1 hour of stooping, 1 hour of climbing, 8 hours of handling/grabbing/grasping big objects, and lifting big boxes." *Id.* However, these contentions must fail, because the ALJ's finding that Plaintiff had the ability to perform the full range of medium work—without postural or manipulative limitations— was supported by substantial evidence. Moreover, the Regulations set forth that "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c). Consequently, the ALJ did not err in finding that Plaintiff could return to her past relevant work, which was defined as "light work" generally and as performed, because this conclusion is supported by the record.

Because the Court finds the ALJ did not err at step four of the sequential evaluation in finding that Plaintiff could perform her past relevant work, Plaintiff's argument that the ALJ should have proceeded to step five of the evaluation is without merit.

## FINDINGS AND RECOMMENDATION

For all these reasons, the Court concludes the ALJ determined properly that Plaintiff was not disabled as defined by the Social Security Act. Though Plaintiff argues the evidence supports a finding that Plaintiff is disabled, the substantial evidence in the record—including the opinions of Dr. Pham, Dr. Fast, and Dr. Reddy— demonstrates Plaintiff has the ability to perform the full range of medium work. Further, with this RFC, Plaintiff has the capability of performing past relevant work as generally or actually performed. Thus, the ALJ's conclusion that Plaintiff is not disabled must be upheld by the Court, because the ALJ applied proper standards and the findings are supported by substantial evidence. *Sanchez*, 812 F.2d at 510; *Burch*, 400 F.3d at 679 (even where "evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. The decision of the Social Security Administration be **AFFIRMED**;
2. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be **DENIED**; and
3. The Clerk of Court be DIRECTED to enter judgment in favor of Defendant

Commissioner of Social Security and against Plaintiff Martha Plasencia de Pulido.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are informed that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 25, 2012**                              **/s/ Jennifer L. Thurston**
                                                       UNITED STATES MAGISTRATE JUDGE